RPD:JGM
F. #2005R01120

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against-

ROBERT A. SCHETTY III,

         Defendant.

- - - - - - - - - - - - - - -X

THE UNITED STATES ATTORNEY CHARGES:

I N F O R M A T I O N

Cr. **CR 07 582**
(T. 18, U.S.C., §§
1832(a)(5), 1837(2)
and 3551 et seq.)

**FEUERSTEIN, S**

**LINDSAY, M.**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUL 17 2007 ★
LONG ISLAND OFFICE

## Introduction

     At all times relevant to this Information, unless
otherwise indicated:

### The Defendant and Companies

     1.   The defendant ROBERT A. SCHETTY III was a vice-
president at Technic, Inc. ("Technic"), a privately-held
corporation based in Rhode Island that manufactured and sold
chemicals used to electroplate semiconductors ("microchips").
SCHETTY worked in the Advanced Technology Division of Technic,
located in Plainview, New York, and supervised research and
development, process integration, marketing, and application
support of Technic's electroplating products.  Technic also had a
facility in the Philippines.

     2.   Rohm and Haas, Co. ("Rohm and Haas") was a publicly
traded company based in Philadelphia, Pennsylvania, and had an

office in Freeport, New York.  Rohm and Haas was in the business
of manufacturing and selling chemicals used to electroplate
microchips.

3.  Amkor Technology ("Amkor") was a publicly traded
company that assembled and packaged microchips and tested the
qualifications of chemicals used in the electroplating process
for microchips.  Amkor was a subcontractor that provided assembly
and packaging services for manufacturers of microchips.  Among
other things, Amkor tested the qualifications of electroplating
solutions sold by various companies, including Technic and Rohm
and Haas.  Among other locations worldwide, Amkor had an assembly
and packaging facility in the Philippines (the "Philippines
Facility"), where Amkor conducted qualification testing for
electroplating solutions.

4.  Intel Corporation ("Intel") was a publicly traded
company that was one of the world's largest manufacturers of
microchips.  Intel contracted with Amkor to assemble and package
Intel microchips and conduct qualification testing for
electroplating solutions used to manufacture Intel's microchips.

Definitions

5.  "Electroplating process" is the process by which
microchips are coated with metal, such as tin or lead, for use in
electronic devices.  Electroplating is the process of using an
electrical current to coat an electrically conductive object with

a relatively thin layer of metal.  The primary application of electroplating deposits a layer of metal having some desired property (e.g., abrasion and wear resistence, corrosion protection, lubricity, or improvement of aesthetics) onto a surface lacking that property.

6.  "Electroplating Solution" is a chemical solution used in the electroplating process that causes metals to adhere to microchips.

7.  A "bath" is the receptacle into which the electroplating solution and microchips are placed during the electroplating process.

8.  "Qualification testing" is the process employed by electroplating companies to determine whether electroplating solutions are qualified to meet the specifications for electroplating various microchips.

9.  "Electronic Mail" or "E-mail" is the mechanism by which individuals transmit messages and images over electronic communications networks.  Sent messages are stored in electronic mailboxes.  An "e-mail address" is a name that identifies an electronic mailbox on a network where e-mail can be sent.

The Scheme to Destroy ST380

10.  Between in or about 2002 and 2005, Technic sold a lead-free electroplating solution, known as the "Technic EP mixed-acid process" ("Technic EP"), to Amkor for use at its

Philippines Facility. Prior to in or about 2004, Intel used electroplating solutions that contained lead, as well as lead-free solutions. In or about 2004, based upon environmental concerns, Intel planned to transition to the use of only lead-free electroplating solutions. As a result, companies that supplied lead-free electroplating solutions to Amkor stood to benefit financially because of Amkor's contract with Intel.

11. In or about 2004, one of Technic's primary competitors, Rohm and Haas, developed a new lead-free electroplating solution known as "ST380." Rohm and Haas represented to Amkor that ST380 was superior to Technic EP. In or about late 2004, Amkor scheduled qualification testing for ST380 at the Philippines Facility.

12. In or about September 2004, the defendant ROBERT A. SCHETTY III learned about the scheduled qualification testing for ST380 and feared that Amkor would replace Technic EP with ST380 at the Philippines Facility.

13. ST380 was a "trade secret" that was the property of Rohm and Haas. In 2004, Rohm and Haas spent approximately $265 million in research and development for its chemical products. Rohm and Haas aggressively protected its intellectual property by filing patent applications and obtaining patents on a worldwide basis, taking extensive measures to secure its trade

secrets.[1]  Rohm and Haas had numerous other measures in place to safeguard its trade secrets, including securing facilities, coding raw materials used in its manufacturing processes, conducting background checks for employees, and requiring employees to sign confidentiality and non-disclosure agreements.

14.   In or about January 2005, Amkor began qualification testing of ST380 at the Philippines Facility. Amkor hired an expert consultant, whose identity is known to the United States Attorney ("Amkor's consultant"), to assist Amkor with the qualification testing of ST380.

15.   In or about January 2005, Amkor's employees prepared a bath of ST380 for qualification testing.  A few days later, Amkor's consultant noticed that the bath of ST380 was bubbling and experiencing significant voltage irregularities. Voltage irregularities occur when the flow of electricity in a bath fluctuates unexpectedly.  To address these unusual problems, Amkor employees prepared another bath of ST380.  Amkor's consultant later noticed that the second bath of ST380 was also bubbling and experiencing significant voltage irregularities.

16.   Prior to and during the qualification of ST380, SCHETTY and Jane Doe, a Technic employee at Technic's facility in the Philippines whose identity is known to the United States

---

[1]In 2004 alone, Rohm and Haas filed 174 patent applications with the United States Patent Office.

Attorney, devised and executed a scheme in which SCHETTY and Jane
Doe sabotaged the qualification testing of ST380 by altering and
destroying two baths of ST380 electroplating solution during the
qualification testing process.  SCHETTY determined that adding
35% pure hydrogen peroxide ("hydrogen peroxide") to a bath of
ST380 would destroy the commercial value of the mixture of ST380.
SCHETTY obtained a quantity of hydrogen peroxide in the United
States and shipped it via Federal Express to Jane Doe in the
Philippines with the intent that it be used to destroy the
commercial value of the ST 380 submitted by Rohm and Haas for
qualification testing at Amkor.  Amkor's consultant later
determined that a contaminant had been introduced into the two
baths of ST380 prepared for qualification testing at the
Philippines Facility and caused the destruction of the mixture of
ST380 in the baths.

      17.  In furtherance of the scheme to alter and destroy
ST380, SCHETTY and Jane Doe exchanged the following e-mails:

            a.   On September 16, 2004, Jane Doe sent SCHETTY
an e-mail in which she stated that she had an "advanced plan" for
ST380 such that ST380 could never pass the qualification testing.
Jane Doe asked SCHETTY to provide her with an "alternative
chemical to mix with ST380 to [cause it to] fail.  A chemical
that cannot be analyzed and traced."

b.  On September 17, 2004, SCHETTY e-mailed Jane Doe and stated, "Thank you, you are doing exactly as a good sales person should do to save this [Technic's] account. . . . [W]e have no choice but to make sure the ST380 evaluation fails."

c.  On December 20, 2004, SCHETTY sent an e-mail to Jane Doe that stated that an "arrangement" had been made to ensure that "ST380 will not be found the best process." SCHETTY also reminded Jane Doe that, if ST380 eventually was tested by Amkor, then Jane Doe "know[s] what . . . to do as we've discussed before to ensure the ST380 results are not favorable."

d.  On January 6, 2005, SCHETTY e-mailed Jane Doe and informed her that he had discovered a chemical needed "to 'kill' ST380 performance." SCHETTY asked Jane Doe if she could obtain "hydrogen peroxide (35%)." SCHETTY then gave Jane Doe explicit instructions on the amount of hydrogen peroxide to mix into the bath of ST380 electroplating solution to ensure that the plan was successful: "you will need to add one liter to a 1000lt bath (along with the other chemical we sent you). If you can't get H202 [hydrogen peroxide] please let me know and we will send you some by Fedex."

e.  On January 13, 2005, Jane Doe e-mailed SCHETTY alerting him that she had not yet received the hydrogen peroxide and asked for the Federal Express tracking number. Jane Doe advised that the Amkor representatives working with her were

days away from carrying out the scheme to sabotage the ST380 tests: "The 1 liter solution that I have right now was already endorsed to the right person. He is planning to put in on Saturday or Sunday C shift because the first qual run of ST380 will be on Monday therefore we need to put this 'additive' in the ST380 bath asap."

      f.  On January 18, 2005, Jane Doe e-mailed SCHETTY and advised him that the first "additive" had been added to the ST380 bath.

      g.  On January 19, 2005, SCHETTY e-mailed Jane Doe and directed her to continue to add the hydrogen peroxide to the bath: "We don't know if the first additive alone will make it [ST380] fail all tests, adding both additives is extra insurance . . . please do what you can."

      h.  On January 19, 2005, Jane Doe e-mailed SCHETTY and advised that she had "goodnews" because the ST380 qualification test was failing.

      i.  On January 20, 2005, SCHETTY e-mailed Jane Doe and stated that he was "[g]lad to hear [that] ST380 initial makeup had problems although I'm sure they will be back soon." SCHETTY advised that he was going to send another batch of "additives" to Jane Doe: "I'm going to arrange another one liter special additive for you for the next makeup, that should be added together with the second additive we provided."

## DESTRUCTION OF TRADE SECRETS

18.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

19.   In or about and between September 2004 and February 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ROBERT SCHETTY III, together with others, did knowingly and intentionally conspire to alter and destroy without authorization a trade secret, to wit: ST380, related to and included in a product produced for or placed in interstate and foreign commerce, intending to convert such trade secret to the economic benefit of someone other than the owner thereof, to wit: Technic, Inc., and intending and knowing that the offense would injure the owner of such trade secret, to wit: Rohm and Haas, Co., and an act in furtherance of the offense was committed in the United States, in violation of 18 U.S.C. § 1832(a)(2).

(Title 18, United States Code, Sections 1832(a)(5), 1837(2) and 3551 et seq.)

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:_____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136